491 So.2d 780 (1986)
Ellen Christine MUNSON
v.
GAYLORD BROADCASTING COMPANY et al.
No. C 4639.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1986.
Rehearing Denied August 13, 1986.
*781 Raymond C. Burkart, Jr., New Orleans, for respondents.
Terrence K. Knister, Walker, Bordelon, Hamlin & Theriot, New Orleans, for petitioners.
Before REDMANN, C.J., and BYRNES and LOBRANO, JJ.
REDMANN, Chief Judge.
On certiorari, we reverse an order against a television station and two reporters compelling discovery. We conclude that the order was not justified by a necessity to prove malice and that the matter ordered produced is not "relevant to the subject matter of the pending action" within La. C.C.P. 1422. To the extent that the matter sought might be deemed remotely relevant, its relevancy is at best so attenuated as to justify a protective order under C.C.P. 1426. A protective order refusing discovery of matter only remotely relevant is more appropriate in our context than a decision on whether freedom of the press (especially as provided by La.Const. art. 1 § 7) prohibits broad discovery of television station outtakes. That question deserves development only in the context of a demand for discovery of matter whose relevancy to the subject matter of the pending action is at least reasonably evident.

I
The discovery is sought in a damage suit by Brett Lynn Morris (for whom this suit was filed by his mother during his minority). Morris alleges that, in a 15-part television series on male prostitution in the New Orleans French Quarter ("Cruisin' the Streets"), defendants WVUE and Richard Angelico and Pierre deGruy portrayed him as a prostitute (and drug user) by presenting matter out of context and violated his privacy by broadcasting his private conversations without his consent. Prior to the order compelling discovery, plaintiff had obtained a tape of the entire series as broadcast, a transcript of the series, and all unbroadcast film or tape involving plaintiff that had been recorded for the series. Parts of the tape as broadcast, however, had been distorted to make three adults' faces unrecognizable. Plaintiff seeks the undistorted original of that tape as well as all unbroadcast tapes not involving him that were recorded for the series.

I
The trial judge reasoned:
"Under the law as I understand it, one of the things that he has to prove is malice. Now, one of the ways that I can envision that he would prove that is to take a complete list and find out why [defendants] singled his client out. And what better way to show malice than to show that you dealt with his client entirely differently from the way that you dealt with anybody else, or at least with some of the other people and why.... That's why I think he's entitled to the original tapes."
Although fault is necessary to a cause of action for defamation under both common law and Louisiana law, and although malice (i.e., deliberate intent to injure) may be an example of fault, malice as such is not an element of a cause of action for defamation.
Restatement Torts 2d § 558 states the elements:
"To create liability for defamation there must be:
(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."
Vicknair v. Daily States Pub. Co., 153 La. 677, 96 So. 529, 530 (1923), observes:
"Under the laws of Louisiana, libel is a quasi offense, actionable under the broad provisions of article 2315 of the Civil Code:

*782 "`Every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it.'
"All that is necessary in this state for a party demanding damages from another for a libel is to allege a condition of things such as would show `a fault' on the part of the defendant, resulting in damages and injury to himself therefrom, and on the trial of the case to establish the truth of the allegations."
Madison v. Bolton, 234 La. 997, 102 So.2d 433, 437 (1958), further explains:
"Libel is actionable under Article 2315 of the Civil Code, declaring that every act of man causing damage to another obliges him by whose fault it happened to repair it.... [Words] that are indisputably defamatory on their face ... are actionable per se; they ... subject [one] to public ridicule, ignominy or disgrace, and are susceptible of but one meaning."
A defamation plaintiff need only "allege a state of facts or a condition of things such as would show such fault on the part of the defendant, as is contemplated under Article 2315 of the LSA-Civil Code, with the resulting damages he claims." Acme Stores v. Better Business Bureau, 225 La. 824, 74 So.2d 43, 44 (La.1954).
Although it is sometimes stated that malice or implied malice is an element of the tort of defamation, Cangelosi v. Schwegmann Bros., 390 So.2d 196 (La. 1980), "the law presumes ... that [an utterance defamatory per se] was uttered with malice ...," Martin v. Markley, 202 La. 291, 11 So.2d 593, 597 (1942). One cannot falsely accuse another of some grave misdeed such as murder or prostitution without being at fault in some way, within the meaning of La. C.C. 2315, at least through "his negligence, his imprudence, or his want of skill," C.C. 2316. It is not unreasonable (although it may not be necessary under C.C. 2315) to declare the negligent publication of so outrageous an accusation a legal equivalent of malice.
A television broadcast that asserts that one is a prostitute is defamatory per se. The outrageousness of the accusation demonstrates defendants' fault as fully as necessary to constitute the tort of defamation, if the accusation is false. Plaintiff is not obliged to prove malice to satisfy Louisiana law.
Nor is plaintiff obliged by U.S. constitutional considerations to prove malice to recover his actual damages, because he is not a public figure. Gertz v. Robert Welch Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed. 789 (1974). Gertz prohibits the award of punitive damages except on a showing of actual malice, but punitive damages are not awardable under Louisiana law in any case (save by specific statutory grant, and none applies here). Ricard v. State, 390 So.2d 882 (La.1980); McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, 85 A.L.R. 1147 (1932), cert. denied 287 U.S. 661, 53 S.Ct. 220, 77 L.Ed. 570; Martin v. City of New Orleans, 678 F.2d 1321 (5 Cir.1982), cert. denied 459 U.S. 1203, 103 S.Ct. 1189, 74 L.Ed.2d 435.
Whether or not defendants acted with actual malice does not affect either plaintiff's claim that he was defamed or the amount of damages he sustained in his defamation and invasion of privacy action. And his argument that as a homosexual he also pursues a civil rights action under 42 U.S.C. §§ 1983-1986, for which actual malice entitles him to punitive damages (which Ricard v. State, supra, denies), is unexplained by his brief or by our reading of those statutes.
The discovery sought is not justified by any necessity to prove actual malice.

II
Relevancy for purposes of discovery, in the words of C.C.P. 1422, is relevancy "to the subject matter of the pending action...," rather than to the precise issues framed by the pleadings for trial. Thus relevancy for discovery is broader than relevancy for trial, although "No one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." Wright & Miller, *783 Federal Practice and Procedure, § 2008. Some tape of plaintiff recorded by defendants for the series might be inadmissible at trial because irrelevant to the issues at trial, yet clearly discoverable as relevant "to the subject matter" of plaintiff's pending action charging defamation by broadcasting tape out of context.
Our grant of certiorari invited briefing of "the relevancy and the discoverability despite the First Amendment (see Lauderback v. ABC, 8 Med.L.Rep. 2407 (U.S.D.C. N.D.Iowa 1982) of the material sought." Plaintiff's brief argues four issues, the first three of which concern the constitutional question. The fourth argues that the material sought is "discoverable to prove": defendants' plan to artificially increase audience-share ratings by a sensational series; the profit motive of that plan; and that "Defendants selected young boys to air for public scrutiny, ... while disguising respected adults who had notoriety in the community and/or the funds to protect their constitutional rights."
Relevancy must be given a broad meaning to accomplish the purposes of discovery, yet the word relevant in C.C.P. 1422 must have some meaning. None of the things plaintiff seeks to prove by compelling the discovery at issue has anything directly to do with the subject matter of plaintiff's action, a demand for damages by an ordinary citizen against a television station for defamation and invasion of privacy (with an ancillary claim that his civil rights were violated by defendants' discriminating against homosexuals by airing the series).
Plaintiff's brief has not satisfied us of any relevancy and none occurs to us. Perhaps the airing of minor prostitutes' identity while concealing adult clients' identity is cowardly, venal, or otherwise unadmirable, but its being so does not have anything to do with the subject matter of an action claiming that the series' portrayal of a particular minor as a prostitute defamed him and invaded his privacy. Whether the defamers acted to inflate audience ratings and thus from a profit motive, or protected (or were afraid to expose) three adult clients of prostitutes, or simply did not broadcast tape of other prostitutes or clients, is irrelevant to the subject matter of plaintiff's action, except in a sense so remote as to be only triflingly relevant. That sense is that those actions relate to the same series in which the alleged defamation occurred, and the matter sought is thus arguably more relevant than, say, the outtakes from another expose that is related to this action only because by the same reporters or by the same television station. Matter that is relevant only in so remote a sense to the subject matter of the pending action, if arguably still relevant within C.C.P. 1422, deserves a protective order under C.C.P. 1426 whenever objection is raised. In our context, to consider defendants' contitutional arguments, rather than hold the matter irrelevant or issue a protective order because of its virtual irrelevancy, would be much ado aboutinsofar as plaintiff showsnothing.
We conclude that, unlike the material that he has already been furnished, the additional material that plaintiff seeks has, in the words of Miller & Wright, "no conceivable bearing on the case" and is therefore not discoverable.
We therefore do not reach defendants' constitutional arguments.
Reversed; discovery denied.